**UNITED STATES of America, Plaintiff,**

v.

**Charles AVENT, Defendant.**

**No. CIV. A. 3:97CR200.**

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 13, 1997.

Cameron McAulay, Asst. U.S. Atty., U.S. Atty's Office, Richmond, VA, for U.S.

Brent Alan Jackson, Oliver Lewis Norrell, III, Jackson, Pickus & Associates, Richmond, VA, for Defendant.

## *MEMORANDUM*

MERHIGE, District Judge.

This matter comes before the Court on Defendant's Motion to Suppress. The motion has been fully briefed, an evidentiary hearing has been held, and the matter is now ripe for decision. be DENIED.

## BACKGROUND

Defendant Avent has been indicted by a federal grand jury in a seven count Indictment for possession with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841 (Counts One and Two), possession of cocaine and heroin in violation of 21 U.S.C. § 844 (Counts Three and Four), using/carrying a firearm in connection with a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Count Five), and possession of a firearm by a previously convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Six). Count Seven seeks forfeitures.

## FINDINGS OF FACT

On July 18, 1997, two Richmond city police officers approached a group of men standing on a corner who immediately dispersed upon seeing the officers' car. Avent did not run, but instead began to walk toward a white Acura before turning and walking the opposite direction. The police approached Avent and asked to speak with him. Avent agreed to talk. The conversation which ensued was recorded by a tape recorder carried by one of the officers. That recording and a transcript thereof were presented to the Court during the evidentiary hearing on this motion.

When the officers asked if Avent was carrying a gun or drugs, Avent lifted his shirt to reveal his waistband, showing that he did not have a gun. The officers asked if Avent had a weapon or drugs on him, and Avent said he did not. The officers then asked if Avent minded if they "check[ed]." Transcript of tape recording of the July 18, 1997 interaction ("Transcript") p. 2. Avent consented to be searched for a weapon or drugs, but asked to have somebody watch the search. Transcript at p. 2. The officers then ordered Avent to spread his legs and place his hands on a car. The officers asked several times if the white Acura that Avent had approached earlier belonged to him, and he stated several times that he did not own the Acura.

During the search of Avent's person, he placed his hands over his front pockets to indicate that he did not want his pockets searched. The transcript of the recording reflects that Avent said, "I ain't got nothing, look. The check, I'm ready to go," to which Officer O'Connor ordered Avent to, "Relax your hands. Relax your hands." The officers found a set of car keys in Avent's pocket, and Avent testified on cross-examination that the officers had found the keys before he started covering his pockets with his hands. Upon finding the keys, the officers asked two more times whether Acura belonged to him, and Avent again denied that it did. However, Avent never consented to allow the officers to search the car. Instead,

he evaded questions, as the following dialogue demonstrates:

Officer O'Connor: So you don't have a car in this area, right?

Avent: No.

Officer O'Connor: So if there's a car around here that fits this key, you don't care what we do with it, right?

Avent: I was getting ready to catch the bus.

Transcript at p. 5.

Upon approaching the Acura, Officer O'Connor said "So you don't mind if I search it then, right?" It appears from the recording and testimony that the officer did not wait for a response to this question before opening the car door, and no response was given. Officer O'Connor looked through the window before opening the door and saw a bulge under the floor mat which he suspected to be guns or drugs. The car door apparently was not locked. The officer merely used the key to see that it fit which confirmed his suspicion that the car belonged to Avent. The officer found a gun and heroin under the floor mat and placed Avent under arrest.

## ANALYSIS

▮ Avent initially consented to talk with the officers, such that the initial questioning did not implicate the Fourth Amendment. *See Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (holding the Fourth Amendment is not implicated in a "police-citizen encounter," where law enforcement officers approach someone in a public place and speak with him or ask the person to answer a few questions). It also appears that Avent initially consented, although reluctantly, to be searched for guns or drugs. A search conducted pursuant to valid consent is a well-recognized exception to the Fourth Amendment's general warrant requirement. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

▮ Having determined that Avent initially voluntarily consented to the search, the inquiry is whether he subsequently withdrew that consent. As this Circuit has held, "a consent to a search is not irrevocable, and thus if a person effectively revokes ... consent prior to the time the search is completed, then the police may not thereafter search in reliance upon the earlier consent." *United States v. Lattimore,* 87 F.3d 647, 651 (4th Cir.1996) (citations omitted). It appears that Avent attempted to revoke his consent by placing his hands over his front pockets in an attempt to stop the officers from searching them, and saying that he was ready to go. The recording of the encounter as reflected in the transcript shows this to be true because after Avent said "I'm ready to go," the officer ordered Avent to "[r]elax your hands. Relax your hands." Transcript at p. 3. However, at the hearing, Avent testified on cross-examination that the officers had already removed the keys to his car from him when he began covering his pockets. Therefore, the officers reasonably believed that Avent's initial consent was still valid at the time they took the keys from his pocket. As the Fourth Circuit has held, "[w]hen a private citizen voluntarily consents to interrogation or a search by police officers, however, he cannot later claim, when criminal conduct is uncovered, that his Fourth Amendment rights were violated. While consent generally has its limits, a consensual search or seizure within those limits does not implicate constitutional rights." *United States v. McFarley,* 991 F.2d 1188, 1191 (4th Cir.1993).

▮ Avent's consent to be searched for guns and weapons may have limited the scope of the officers' search to items of that nature, such that the seizure of his car keys was a violation of his Fourth Amendment rights. Like the determination of the voluntariness of the consent to a search, the parameters of a consensual search is a factual issue that must be determined by considering the totality of the circumstances surrounding the search. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Hardin,* 710 F.2d 1231, 1236 (7th Cir.1983). The Court does not reach the issue of whether the officers exceeded the parameters of Avent's consensual search, however, because even if the officers' taking Avent's keys had been proper, the Fourth Amendment required that the officers have either probable cause or consent to use those keys to open and search the

white Acura which they believed belonged to him. The officers had neither. The Court is unconvinced that Avent consented to have the car searched. He repeatedly denied owning the car, but nowhere in the transcript of the interaction did Avent say that he did not care whether the officers searched the car or not. To the contrary, the Court is persuaded by Avent's testimony that he lied about owning the car so that the officers would *not* search the car.

The officers also had no probable cause to search the car. The officers' observations that Avent was visibly nervous and their belief that he was lying about ownership of the white Acura do not constitute probable cause to search the car. The Fourth Circuit has held that a defendant's demeanor, such as becoming "very nervous" at the approach of a police officer, is a valid factor in an officer's decision to conduct a *Terry*-type stop and weapons pat-down. *See, e.g., United States v. LeFevre*, 685 F.2d 897, 899 (4th Cir.1982). However, this has not been extended such that a citizen's nervous demeanor would justify searching a car a block away which officers believe may belong to that citizen.

Although Avent had not consented to the search of his car, and the officers had no probable cause to search his car, the Defendant has no standing to object to the search of his car. First, the Court rejects the Government's argument that Avent has no standing because the car is not registered in his name. Avent has sufficient interest in the car to object to officers searching it. Although the Acura is not registered in Avent's name, the Court is persuaded by Avent's testimony that it is registered in another person's name only for the purpose of obtaining a lower car insurance rate, and that Avent himself purchased the car and maintains exclusive control of it. Nonetheless, ownership or possession of an item seized is insufficient in itself to establish a right to a legitimate expectation of privacy in the particular area searched. *See United States v. Manbeck*, 744 F.2d 360, 374 (4th Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985); *United States v. Ramapuram*, 632 F.2d 1149, 1154 (4th Cir.1980), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981) (ownership alone not sufficient to establish reasonable and legitimate expectation of privacy).

In order to obtain standing, Avent must show that the search and seizure violated his personal Fourth Amendment right to a legitimate expectation of privacy in the particular area searched. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). A legitimate expectation of privacy depends upon two factors: whether the defendant has manifested a subjective expectation of privacy in the particular area searched and whether society is prepared to recognize this expectation of privacy as objectively reasonable. *See California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The Defendant bears the burden of establishing these factors. *See id.* at 134, 99 S.Ct. at 425–26. Although Avent had sufficient ownership interest in the car to object to its search, he repeatedly denied ownership of the car, and indeed attempted to convince the officers that he had no association with the car whatsoever. As a result, Avent clearly did not manifest a subjective expectation of privacy in the car. Therefore, he has no standing to object to the search of the car, and the Court will deny his motion to suppress the evidence obtained during the search thereof.

## CONCLUSION

Defendant Avent consented to the search of his person and did not attempt to revoke that consent until the keys to his car had already been obtained from his pocket by the officers. The officers neither had the authority to use the keys to open the car, nor to open the unlocked car without the keys. The officers did not have probable cause, and Avent did not consent to the search. However, Avent does not have standing to object to the search because he repeatedly denied ownership of the car and thereby failed to manifest a subjective expectation of privacy in it. Therefore, the Court will DENY his motion to suppress the evidence obtained in

the search of his car. An appropriate Order shall issue.