United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 2, 2007**

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the F ifth Circuit

m 05-30869

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

KENNETH S. DILLEY

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Louisiana
m 3:04-CR-75-1

Before SMITH, BENAVIDES, and PRADO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Kenneth Dilley was convicted of conspiracy to manufacture and distribute methamphetamine, possession with intent to distribute methamphetamine, and possession of a fire-arm. He appeals his conviction by challenging the denial of his motion to suppress evidence found in his storage unit, claiming that his statement to police did not constitute free and voluntary consent to a search. Because the consent was voluntary, and a reasonable officer would have believed that Dilley had authority to consent to a search, we affirm.

## I.

Suspecting that Dilley might be involved in illegal drug activity, police surveilled him on two occasions and learned from a confidential informant that he maintained a storage unit. Upon completing a background check, police also discovered that he had several outstanding warrants.

A few days later, police resumed their surveillance and observed Dilley exiting his house and placing a black bag into an illegally-licensed Lexus. He drove away, and the police followed him to the storage facility, where they initiated a stop based on the outstanding warrants. Trying to escape, Dilley drove toward the officers and then into an adjacent field. After his car got stuck in the mud, he exited it and tried to crawl underneath it.

Dilley was on the ground, covered in mud and bleeding from a head wound. Officers arrested and handcuffed him and gave a *Miranda* warning. In Dilley's wallet was a receipt from the storage facility. Upon searching his vehicle, officers found a set of keys, a duffel bag containing drugs, a gun, and several ledgers.

An officer asked Dilley whether he rented a unit at the storage facility, which he vehemently denied. When he was confronted with the receipt, Dilley replied, "I don't have a unit over there. You can search any of them over there. You are not going to find anything."

Deeming that response to constitute consent, an officer proceeded to storage unit number sixteen and opened it with the keys found in the Lexus. Inside, officers discovered a gun, ammunition, plastic bags, and a personalized license plate bearing Dilley's name.

Dilley admitted to renting the storage unit, but he moved to suppress any evidence obtained therein as the fruit of an unlawful search.[1] He argued that because he had denied ownership of the unit, he did not give valid, free, and voluntary consent to a search. The district court denied the motion.

## II.

When courts review a search justified by consent, there are four distinct issues. First, as a threshold matter, the government must demonstrate that the defendant did consent.[2] If a defendant consents to a search, probable cause analysis is inapplicable, and the search is measured against the general Fourth Amendment requirement of reasonableness.[3] Existence of consent is determined based on the totality of the circumstances.[4]

Once the government has demonstrated consent, the next issue is whether it was

---

[1] Dilley moved to suppress the fruits of the automobile search, as well as of the storage unit search, but he does not appeal the auto search.

[2] *See United States v. Price*, 54 F.3d 342 (7th Cir. 1995) (examining whether a defendant who responded "Sure" meant "Sure you can search" or "Sure, I mind if you search"); *United States v. Barrington*, 210 F. Supp. 2d 773, 778 (E.D. Va. 2002) (same).

[3] *See Illinois v. Rodriguez*, 497 U.S. 177, 183 (1980) ("What [the defendant] is assured by the Fourth Amendment itself, however, is not that no government search of his house will occur unless he consents; but that no such search will occur that is 'unreasonable.'"). Even where police have obtained a search warrant, if the suspect consents they need not execute the warrant. *United States v. Lee*, 356 F.3d 831 (8th Cir. 2003).

[4] *See, e.g., Price*, 54 F.3d at 345.

voluntary.[5] Voluntariness is to be determined based on the totality of the circumstances, with the burden of proof on the government.[6]

If the government demonstrates voluntary consent, two issues remain: whether the search was within the scope of the consent granted;[7] and whether the consenting individual had authority to consent.[8] Unlike the first two issues, scope and authority are not determined based on a totality-of-the-circumstances standard, but rather by a reasonable-officer standard.[9] The burden of proof remains on the government.

Because all four issues are factual, we review the district court's determinations for clear error.[10] We review its ultimate Fourth Amendment conclusions *de novo*.[11]

### III.

In claiming that the district court committed clear error, Dilley does not primarily argue that he did not consent or that his consent was not voluntary.[12] Instead, his claim goes to authority: When he denied ownership of the unit, the police could not have thought he had the authority to consent to a search.

---

[5] *See Schneckloth v. Bustamonte*, 412 U.S. 218 (analyzing voluntariness under a totality-of-the-circumstances test).

[6] *Id.* This circuit uses a six-factor test to determine voluntariness. *See United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993) ("In evaluating the voluntariness of consent, we have considered six factors: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. All six factors are relevant, but no single one is dispositive or controlling.") (citations omitted).

[7] *See United States v. Ibarra*, 965 F.2d 1354, 1356 n.2 (5th Cir. 1992) (en banc) (per curiam) (affirming by equally-divided court) ("Government has the burden of proving the search was conducted within the scope of the consent received.").

[8] *See United States v. Matlock*, 415 U.S. 164 (1974) (considering whether police can rely on consent of third party); *Rodriguez* (same).

[9] *See Florida v. Jimeno*, 500 U.S. 248, 251 (continued...)

---

[9](...continued)
(1991) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonablenessSSwhat would the typical reasonable person have understood by the exchange between the officer and the suspect?"); *Rodriguez*, 497 U.S. at 186-88 ("Whether the basis for such authority [to consent] exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment, and all the Fourth Amendment requires is that they answer it reasonably. . . . Would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?").

[10] *Price*, 54 F.3d at 345.

[11] *United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003).

[12] Although Dilley was under arrest when he gave consent, he had received his *Miranda* warnings and makes no allegation that his consent was obtained through force or coercion. The district court's conclusion that his consent was voluntary is not clearly erroneous.

If a reasonable officer could believe that Dilley had authority to consent to a search of the storage unit, the search was reasonable under the Fourth Amendment.[13] At the time he consented, police had received a tip that he maintained storage unit number sixteen, they had observed him driving into the storage facility, and they had found a receipt and keys for the unit in his possession. With this evidence, a reasonable officer could believe that Dilley had authority to consent to a search, despite his bald denial of ownership.

Dilley maintains that *United States v. Vega*, 221 F.3d 789 (5th Cir. 2000), compels a different result. There, in response to police questioning, the defendant denied residing at a particular house. We noted that Fourth Amendment rights are not lost by one's refusal to give incriminating answers to police questioning. *Id.* at 797. "One does not lose the legitimate expectation of privacy in a residence merely by denying an interest therein. Indeed, a misleading response to an officer's question is a far cry from consent to search." *Id.* (citations omitted).

*Vega* is not determinative, however, because Dilley's consent was not gleaned from his denial of ownership, but from his statement, "You can search any of them over there. You are not going to find anything." Dilley maintained the expectation of privacy in his storage unit even after denying his ownership, then he exercised his property rights by consenting to a search of the location. *Vega* does not compel a contrary result.

---

[13] *See also United States v. Chaidez*, 919 F.2d 1193, 1201-02 (7th Cir. 1990) (holding that actual authority justifies a search even where it was not reasonable for the police to have believed the consenter had authority).

The judgment is AFFIRMED.

4