United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 27, 2007**

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
## for the Fifth Circuit

---

m 05-11231

---

UNITED STATES OF AMERICA

Plaintiff-Appellee,

VERSUS

MACULLON FREEMAN,
ALSO KNOWN AS TED LEWIS BROWN,

Defendant-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*\* \* \* \* \* \* \* \* \* \* \* \* \*

---

m 05-11254

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant.

VERSUS

KENNETH ANTHONY CHAN,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, SMITH, and
    DEMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Macullon Freeman and Kenneth Chan were convicted of possession with intent to distribute cocaine. They appeal the denial of a motion to suppress evidence found in a backpack during a search of their shared sleeping car. Because the consent was voluntary and a reasonable officer would have believed that Chan had authority to consent and that his consent covered the backpack, we affirm.

## I.

Four law enforcement agents approached the defendants on a train platform in Fort Worth because of defendants' suspicious itinerary.[1] Officer Gregg identified himself as an officer and asked Freeman whether he had a bag in the storage area on the lower end of the train. Freeman identified himself as "Ted Brown" and claimed an untagged bag as his own. He consented to a search of the bag, which turned up nothing of significance. The officer asked Freeman whether he had any other baggage; Freeman responded that he did not.

Officer Morton then spoke with Chan, whom he had seen talking to Freeman. Morton asked for Chan's train ticket; Chan said it was in the sleeping car and he would not mind getting it. Morton followed Chan into the train, waiting outside the room while Chan retrieved the ticket. Morton asked Chan whether the bags in the room were his; Chan said they were. Morton asked Chan whether he would consent to a search; Chan consented and confirmed that he had no bags other than the ones inside the room.

Morton entered the room to search; he later testified that the only things immediately visible were a small leather binder and a shaving kit. Behind a chair in the room, in a large pocket, Morton found a black backpack. Inside he found two large blocks of cocaine, along with airline tickets and motel receipts in the name of Ted Brown. At no point did Morton ask Chan whether the backpack was his or for consent to look in the backpack.

At the suppression hearing the district court found that Chan had given verbal consent to search the room and that the officer would have reasonably believed that this included consent to search bags in the room. The

---

[1] The two defendants had made a last-minute, one-way reservation of a sleeping car from San Antonio to Washington, D.C., on Chan's credit card. Because reasonable suspicion is not necessary for officers to approach individuals in public areas, we express no opinion on whether the officers had reasonable suspicion to instigate a *Terry* stop. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *Florida v. Royer*, 460 U.S. 491, 497-98 (1983) (plurality).

court initially granted the suppression motion, however, concluding that "I've been provided no authority by the government that consent to search the room carried with it consent to search the backpack." The next day, the court reversed its ruling, concluding that the proper legal test was one of "objective reasonableness" and finding that it was objectively reasonable for Morton to believe Chan's consent included consent to search the backpack, because it was in plain sight.

## II.

When courts review a search justified by consent, there are four distinct issues. *United States v. Dilley*, 2007 WL 624207, at *1 (5th Cir. Mar. 2, 2007). First, as a threshold matter, the government must demonstrate that the defendant did consent.[2] If he consents, probable cause analysis is inapplicable, and the search is measured against the general Fourth Amendment requirement of reasonableness.[3] Existence of consent is determined based on the totality of the circumstances. *See, e.g., Price*, 54 F.3d at 345.

Once the government has demonstrated

consent, the next issue is whether it was voluntary.[4] Voluntariness is to be determined based on the totality of the circumstances, with the burden of proof on the government.[5]

If the government demonstrates voluntary consent, two issues remain: whether the search was within the scope of the consent;[6] and whether the consenting individual had authority to consent.[7] Unlike the first two issues, scope and authority are not determined based on a totality-of-the-circumstances standard, but by a reasonable-officer standard.[8] The

---

[2] *See United States v. Price*, 54 F.3d 342, 346 (7th Cir. 1995) (examining whether a defendant who responded "Sure" meant "Sure you can search" or "Sure, I mind if you search"); *United States v. Barrington*, 210 F. Supp. 2d 773, 778 (E.D. Va. 2002) (same).

[3] *See Illinois v. Rodriguez*, 497 U.S. 177, 183 (1990) ("What [the defendant] is assured by the Fourth Amendment itself, however, is not that no government search of his house will occur unless he consents; but that no such search will occur that is 'unreasonable.'"). Even where police have obtained a search warrant, if the suspect consents they need not execute the warrant. *United States v. Lee*, 356 F.3d 831 (8th Cir. 2003).

[4] *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (analyzing voluntariness under a totality-of-the-circumstances test).

[5] *Id.*

[6] *See United States v. Ibarra*, 965 F.2d 1354, 1356 n.2 (5th Cir. 1992) (en banc) (per curiam) (affirming by equally-divided court) ("Government has the burden of proving the search was conducted within the scope of the consent received.").

[7] *See United States v. Matlock*, 415 U.S. 164, 169-71 (1974) (considering whether police can rely on consent of third party); *Rodriguez*, 497 U.S. at 183-89 (same).

[8] *See Florida v. Jimeno*, 500 U.S. 248, 251 (1991) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonablenessSSwhat would the typical reasonable person have understood by the exchange between the officer and the suspect?"); *Rodriguez*, 497 U.S. at 186-88 ("Whether the basis for such authority [to consent] exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment, and all the Fourth Amendment requires is that they answer it reasonably. . . . Would the facts available to the officer at the mo-
(continued...)

3

burden of proof remains on the government.

Because all four issues are factual, we review the district court's determinations for clear error.[9] We review its ultimate Fourth Amendment conclusions *de novo*. *United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003).

### III.

The defendants do not dispute that Chan consented to a search of the sleeping car. They do allege that his consent was not voluntary because Chan was not informed that he could refuse consent, and the agents were armed.

This circuit uses a six-factor test to determine voluntariness:

(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. All six factors are relevant, but no single one is dispositive or controlling.

*United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993) (citations omitted).

The district court made a finding of voluntariness after an oral hearing, so our review under the clearly erroneous standard is particularly deferential. *Id.* Freeman and Chan have not made the necessary showing.

At the time of Chan's consent, he was not in custody. Although the officer had identified himself as a policeman, there was no indication that the defendants were not free to leave; this suggests the interaction was an encounter.[10] The defendants proffer no substantial evidence of coercion.

Chan was cooperative, which suggests voluntariness, and although he was not informed that he could deny consent, this fact is "not to be given controlling significance." *United States v. Watson*, 423 U.S. 411, 425 (1976).

The defendants presented no evidence that Chan was unaware of his right to deny consent, nor any evidence that he was mentally deficient or unable to exercise his free will in consenting. Finally, although incriminating evidence was found, Chan argued at trial that he was unaware of the cocaine, an argument that

---

[8](...continued)
ment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?").

[9] *Price*, 54 F.3d at 345. *See also United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993) ("Where the judge bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the judge had the opportunity to observe the demeanor of the witnesses.").

[10] *See Royer*, 460 U.S. at 497-98 ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification.") (plurality) (citations omitted).

suggests the voluntariness of consent.

## IV.

Defendants argue that the district court committed clear error in holding, after reversing its oral pronouncement, that the backpack was within the scope of Chan's consent. They aver that Chan's consent to search the room did not authorize the search of a closed backpack inside the room.

This argument is foreclosed by *Florida v. Jimeno*, 500 U.S. 248 (1991). There, a police officer initiated a valid vehicle stop, then asked the driver for permission to search the car. After receiving consent, during the search the officer found a closed bag on the floor and opened it to reveal a kilogram of cocaine.

In analyzing whether consent to search the car extended to closed containers in the car, the Court recognized that "the touchstone of the Fourteenth Amendment is reasonableness." *Id.* at 250. Noting that the officer had informed the defendant that he suspected drugs were in the car and that the defendant had put no "explicit limitation" on the scope of the search, the Court concluded that "if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Id.* at 252.

The Court specifically rejected the notion that an officer should be required to request permission before searching each individual container. *Id.* Interpreting *Jimeno*, we have noted that "the defendant, as the individual knowing the contents of the [searched area], has the responsibility to limit the scope of the

consent."[11]

It is undisputed that Chan had watched the police examine the contents of Freeman's bag and that the officer asked Chan whether the bags in the room were his. A reasonable officer could certainly assume that consent to search the room included consent to search any unlocked bags in the room. A reasonable officer could also assume that Chan, having traveled in the railroad car from San Antonio to Fort Worth, would be aware of the contents of the car. Because Chan did not attempt to limit his consent, the officer was not constitutionally unreasonable by construing Chan's consent to include the backpack.

## V.

The defendants argue that Chan lacked authority to consent to a search of Freeman's backpack. They point to *United States v. Jaras*, 86 F.3d 383 (5th Cir. 1996), as establishing that the government must demonstrate that the officers "reasonably (though erroneously) believed that the person who has consented to their search had authority to do so." *Id.* at 389 (citing *Rodriguez*, 497 U.S. at 186 (internal quotations omitted)). Although the defendants cite the correct standard for apparent authority, the government made the necessary showing in this case.

In *Rodriguez*, police searched an apartment after obtaining consent from the defendant's girlfriend, who had no property interest in the apartment. The Court stated that the test was whether "the facts available to the officer at the moment [would] warrant a man of reasonable caution in the belief that the consenting

---

[11] *United States v. McSween*, 53 F.3d 684, 688 (5th Cir. 1995) (citing *United States v. Rich*, 992 F.2d 502, 507 (5th Cir. 1993)).

5

party had authority over the premises?" *Id.* at 188 (ellipses and citations omitted). The Court remanded so that the lower court could determine whether the officers reasonably believed that the girlfriend had authority to consent.

In *Jaras*, a defendant moved to suppress evidence found in two suitcases in the trunk of the car he was riding in. Although the driver gave consent to search the car, he specifically informed the police that the suitcases belonged to the defendant, a passenger. Nevertheless, the police opened the suitcases without obtaining consent from the defendant. We noted that there could be no claim that the driver possessed actual authority over the suitcases, because there was no showing of mutual use or joint access and control. *Jaras*, 86 F.3d at 389. Similarly, there could be no claim of apparent authority, because the consenting party informed the officers that the suitcases did not belong to him. *Id.* at 389-90. No reasonable officer could have believed that the driver had authority to consent, so the search could not be justified based on the driver's consent.

The present facts are distinguishable from those in *Jaras*. Morton could not have known that the backpack belonged to Freeman until after he had already opened it. He could also reasonably rely on Chan's statement that all the bags in the room were his. Chan had just exited the sleeping car before making the statement and had traveled in the car from San Antonio to Fort Worth; it was reasonable to believe he would have been aware of any bags contained therein. Morton had also heard Freeman state to the other officers that he had no other luggage. A reasonable officer could believe that the bag belonged to Chan and that he had authority to consent to its search, and the district court was not clearly erroneous when it concluded as much.[12]

AFFIRMED.

---

[12] Alternatively, Chan may have had actual authority over the backpack, based on his co-occupancy of the sleeping car. Where two individuals are co-tenants or co-occupants, they assume the risk that the co-user may consent to a search. *United States v. Richard*, 994 F.2d 244, 250 (5th Cir. 1993). "Unless the complaining co-tenant has somehow limited the other's access to a piece of property, the consenting co-tenant's authority extends to all items on the premises." *Id.* In *Richard*, this court found that the defendant's girlfriend had authority to consent to a search of their hotel room, in which a number of suitcases belonging to the defendant were seized. Similarly, Chan had access to the entire sleeping car and had authority to consent to a search of the car, including any items on the premises, such as the backpack.

6