ALTENBERND, Judge.
The State appeals an order granting Jerry Petion’s motion to suppress physical evidence seized as a result of a traffic stop. The evidence, primarily powder cocaine, was found in a secret compartment inside the car he was driving. The circuit court concluded that the car was legally stopped by a deputy and that Mr. Petion initially consented to a search of the vehicle. However, the circuit court further concluded that Mr. Petion withdrew his consent by nonverbal communication after the deputy located the secret compartment but before the deputy opened it. The circuit court also based its decision on the deputy’s failure to use an available videorecorder to record the discussion in which Mr. Petion gave his consent for the search. Accepting the circuit court’s findings of fact, we conclude the State established that Mr. Petion took no action that an objectively reasonable police officer would interpret as a withdrawal of his consent to search, including the consent to search the secret compartment. Further, the deputy was not required to record the roadside consent to fulfill the requirements of the Fourth Amendment. We therefore reverse the order on appeal and remand for further proceedings.
I. THE EVIDENCE AT THE SUPPRESSION HEARING AND THE RULING BY THE CIRCUIT COURT
On December 31, 2005, the Interstate Crime Enforcement Unit of the Sarasota County Sheriffs Office deployed a sergeant to watch the interstate for criminal activity. At 3:15 a.m., the sergeant observed Mr. Petion’s car. As it passed his *892 vehicle going northbound, the sergeant observed that Mr. Petion’s windows were heavily tinted. Even though it was nighttime, the sergeant was positioned in a location where such improper tinting was observable. After the car passed, the sergeant also observed that the tag light was inoperable on the rear of the car.
The sergeant pulled his vehicle onto the interstate behind Mr. Petion’s car. Even though the tag light was inoperable, he could read the license plate. The license plate was registered to a car that was the same make and model as the one Mr. Petion was driving, but the registration indicated that the car should be red and the car was in fact silver. The sergeant decided to conduct a traffic stop.
When the sergeant stopped the ear, Mr. Petion was very cooperative. Mr. Petion was not the registered owner of the vehicle. He was wearing baggy clothing, which prompted the sergeant to ask him whether he had any weapons. Mr. Petion indicated that he had no weapons and offered to let the sergeant search him and the car if he wished. The sergeant did not conduct a patdown or search at that time.
Using a tint meter, the sergeant determined that the tinting registered a 5% transmittance ratio when any reading below 28% was a violation of the uniform traffic control law. See § 316.2953, Fla. Stat. (2005). Mr. Petion explained that he had been stopped for the same violation two days earlier in Miami and showed the sergeant the citation from Miami. When he retrieved the citation from the center console, a roll of money wrapped in a rubber band, later determined to total $940, fell out of the console. When asked about the money, Mr. Petion explained that it was spending money. The sergeant also determined that the car had been painted and that the license plate was proper.
Because Mr. Petion had already received a citation for the tinting, the sergeant decided to give him only a “general warning” for the tag light and the tinting. At approximately this point, a second deputy arrived at the scene of the stop. The sergeant testified that he gave Mr. Petion the written warning and told him he was free to go. Because Mr. Petion had previously offered to let the sergeant search him and the vehicle and because the two deputies thought the totality of the circumstances seemed unusual, the sergeant then asked if he could still search Mr. Petion and the vehicle. Mr. Petion was still very cooperative. According to the sergeant, Mr. Petion was asked “if he would allow a full search of the vehicle, including any containers and compartments within the vehicle,” and he readily agreed.
Approximately two minutes into the search, the deputy found an “after-market compartment” in the right rear passenger area. The deputies asked Mr. Petion about the compartment, and he professed no knowledge of any compartment. The sergeant, who had more training concerning such compartments, then examined it and believed it was the type of hidden compartment used to transport contraband. Such compartments can be difficult to open. The sergeant examined the compartment with a fiber optic device and inside the compartment he could see electronic wires connected to a sophisticated opening mechanism. The sergeant asked Mr. Petion if he knew how to open it, and Mr. Petion said that he did not. The sergeant explained that he would need to use tools to force the compartment open. According to the sergeant, Mr. Petion remained quite calm throughout this process and simply shrugged his shoulders in a manner that the sergeant interpreted as “okay.” If anything, Mr. Petion was un *893 usually calm, actually lounging on the side of the interstate.
It took the two deputies approximately an hour to open the secret compartment. Inside they found a bundle consisting of wrapped layers of various materials to deodorize the interior content, which was more than 270 grams of powder cocaine. After finding the cocaine, the deputies read Mr. Petion his Miranda[1] rights. He then explained that the car was not his but belonged to a family member.
The deputies then applied for a search warrant because they had not fully opened the compartment. A second search revealed items that might be useful as evidence of drug trafficking or perhaps evidence supporting a charge of possession of paraphernalia, but no additional cocaine. Following the second search, the deputies arrested Mr. Petion for trafficking in cocaine and commenced forfeiture proceedings against both the car and the $940 in currency.
Mr. Petion filed a motion to suppress the evidence obtained in the two searches, arguing that the traffic stop was improper and that he had withdrawn consent to search after the deputies found the compartment, but before they opened it. He also argued that the destructive nature of the search, forcing open the secret compartment, was beyond the scope of his consent. During the evidentiary hearing, he elicited testimony that the sheriffs vehicles had VHS recording equipment. Although the recorder in the sergeant’s car was apparently inoperable, the recorder in the deputy’s car was functioning and could have been used to record Mr. Petion’s consent to the initial search. The deputy’s only explanation for why he did not use the recorders was: “Not my style.”
Mr. Petion offered no testimony at the suppression hearing. After hearing the evidence presented by the State, the circuit judge gave his ruling from the bench. He then had the oral explanation transcribed for attachment to an order that granted the motion without any additional findings. In the ten-page transcript, the judge explained that he was initially concerned about the traffic stop, but that he was convinced from the sergeant’s testimony that there was a proper basis to stop the car. As to the issue of consent, the circuit judge concluded that he believed the officers’ testimony that they had obtained a sufficient consent. He explained:
From the testimony given today, un-contradicted by both officers, the consent here certainly does appear to be freely and voluntarily given. I can’t ignore and probably never will the fact that Mr. Petion evidently was so relaxed that he was lying down on the pavement. Perhaps he was lying down on the pavement because it took an hour to tear his car apart. I’m not really sure. But the fact remains that he, I think, did say, well, yeah, go ahead. You know, I’m not supposed to speculate, but either he was doing that because he was totally completely innocent and had no clue that the stuff was in there in a secret compartment, or he felt that they’re never going to find the secret compartment. I don’t know.
The judge was concerned, however, that the consent did not include “tearing the vehicle] apart for an hour with tools.” He concluded that Mr. Petion revoked consent when he refused to assist the officers in gaining access to this compartment. As he explained:
It’s been testified to that the consent was rather general, as [the prosecutor] said, and it seems to include all of the *894 car, the compartments, the containers. To me, logic would state when somebody says, yeah, check my car, it doesn’t mean tear it apart for an hour with tools. In my opinion, any consent which was given here by Mr. Petion was revoked. He refused to assist the officers in gaining access to this compartment. He refused to do that. If in fact he was so easy-going, happy-go-lucky, he could have given them consent to open that, particularly since he didn’t own the car. He refused to do that. A mere shrugging of the shoulders could be inferred by [the sergeant] that it was, yeah, well, what the heck, whatever, but I’m not going to infer that. He refused to help them. That, to me, constitutes a revocation of his otherwise carefree, voluntary submission or consent.
The judge continued:
But here’s the biggest problem in this case, in my opinion. This was a war-rantless search. The State’s very heavy burden is to show that it’s freely and voluntarily given. I find it rather inexcusable not to have used the one VHS camera that was in [the deputy’s] car to verify what the officers testified to. From their testimony it appears as though this consent was a piece of cake. If it was such a piece of cake, it seems incredible to me that they would not want to record it to substantiate what they said because, frankly, probably a lot of people would find it hard to believe that a guy is lying on the road and he just says, yeah, just tear my car apart, but they did not do that.
In conclusion, the court ruled:
Does it mean I don’t believe the officers? No. But it means that the State has not met its burden because some of this is just frankly outrageous to go beyond a mere opening of a car trunk or something like that. It’s tearing apart, in [the sergeant’s] words, of the ear. That’s what he said.
So regrettably because it doesn’t make me very popular with law enforcement, I’m sure, that’s why I have the gray hair, I find that the search was unconstitutional and since it was unconstitutional, going for the search warrant is also not proper based upon all the case law that I’ve read and the evidence is regrettably suppressed.
The State has appealed this order. See Fla. R.App. P. 9.140(c)(1)(B).
II. THE DIFFICULTIES CREATED BY AN ORAL RULING ON A COMPLICATED MOTION TO SUPPRESS
At the outset of our analysis, we comment that the circuit court’s decision to attach a long transcript of its oral ruling to an order granting a motion to suppress has made our job more difficult under the standard of review appropriate for such motions. We employ a mixed standard of review in considering a circuit court’s ruling on a motion to suppress. The circuit court’s determination of historical facts enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence in the record. See State v. Clark, 986 So.2d 625, 628 (Fla. 2d DCA 2008); E.B. v. State, 866 So.2d 200, 202 (Fla. 2d DCA 2004). However, the circuit court’s determinations on mixed questions of law and fact and its legal conclusions are subject to de novo review. See id.; see also Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Connor v. State, 803 So.2d 598, 608 (Fla.2001).
When both the factual determinations and the legal issues are complex at a suppression hearing, the circuit court’s oral explanation will rarely provide the structure to assist us in knowing exactly which *895 historical factual findings the court actually relied upon in deciding the suppression issue. Likewise, the circuit court’s determinations and conclusions as to questions that we review de novo may lack the type of logical structure that facilitates our independent analysis and justifies the traditional presumption of correctness given to the circuit court. In this case, for example, there are points in the oral ruling where the circuit judge at least implies that he may not believe all aspects of the two deputies’ testimony, but then he expressly states that he is not ruling that the deputies have lied. As explained below, the critical factual finding upon which the circuit court based its ruling was not actually supported by any evidence. This is the type of mistake that a circuit judge may likely discover in preparing a traditional written order.
III. THE CIRCUIT COURT CORRECTLY DETERMINED THAT THE STOP WAS LEGAL AND THAT CONSENT WAS INITIALLY GIVEN TO PERMIT THE SEARCH
At this point, there can be no dispute that the car Mr. Petion was operating was lawfully stopped by the sergeant. It is well established that an officer can stop a car for an inoperable tag light, see Cole v. State, 838 So.2d 1205, 1205 (Fla. 2d DCA 2003), or for a tint violation, see Lawrence v. State, 942 So.2d 467, 468 (Fla. 4th DCA 2006); Davis v. State, 788 So.2d 308, 309 (Fla. 5th DCA 2001). The circuit court made findings of historical fact, supported by competent, substantial evidence, that support its decision that this case involved both an inoperable tag light and a tint violation.
Likewise, there can be no dispute that Mr. Petion gave a valid, initial consent to search the vehicle. As stated in Luna-Martinez v. State, 984 So.2d 592 (Fla. 2d DCA 2008):
“[A] search pursuant to consent,” if “properly conducted, is a constitutionally permissible and wholly legitimate aspect of effective police activity. But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force.” Schneckloth v. Bustamonte, 412 U.S. 218, 228, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). “[I]t is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced.” Id. at 233, 93 S.Ct. 2041. “In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.” Id. at 229, 93 S.Ct. 2041.
Id. at 597. The circuit court carefully considered the issue of whether Mr. Petion’s consent to search the car was voluntary. Its findings of historical fact support the conclusion that Mr. Petion’s initial grant of permission to search the car was voluntary.
The circuit court also correctly determined that the scope of the consensual search included the passenger compartment. The evidence established that the deputies expressly asked to search the vehicle, including any containers and compartments, and that Mr. Petion consented. Thus, under the guidelines described in Florida v. Jimeno, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), the deputies did not violate the scope of the search at least in the period prior to finding the secret compartment. As stated in Jimeno:
The scope of a search is generally defined by its expressed object. United States v. Ross, 456 U.S. 798, 102 S.Ct. *896 2157, 72 L.Ed.2d 572 (1982). In this case, the terms of the search’s authorization were simple. Respondent granted [the officer] permission to search his car, and did not place any explicit limitation on the scope of the search.
Id. at 251, 111 S.Ct. 1801. The circumstances in this case are comparable to those in Jimeno.
IV. THE CIRCUIT COURT ERRED IN RULING THAT MR. PETION WITHDREW HIS CONSENT
Under the United States Supreme Court’s holding in Jimeno, the deputies did not need to obtain additional or separate permission to continue the search into the locked, secret compartment. Jimeno, 500 U.S. at 251, 111 S.Ct. 1801 (“[I]t was objectively reasonable for the police to conclude that the general consent to search respondent’s car [for drugs] included consent to search containers within that car which might bear drugs.”). Thus, from the viewpoint of the circuit court, the primary issue in this case was whether Mr. Petion withdrew his consent to search the secret compartment after it was discovered. As explained above, the circuit court determined that Mr. Petion revoked his consent when he refused to assist the deputies in gaining access to the compartment. The problem with this finding is that Mr. Petion did not testify at the suppression hearing, and the testimony from the two deputies established that Mr. Petion claimed that he did not own the car and knew nothing about the secret compartment or how to open it.[2] He never asked them to stop the search, he shrugged when given the opportunity to object to the deputy’s forcing open the compartment, and sat passively on the side of the road for the one-hour period while the deputies were trying to break into the compartment.
“It is well settled that in the context of a consensual encounter, a voluntary consent to search can be withdrawn. See Parker v. State, 693 So.2d 92 (Fla. 2d DCA 1997); Jimenez v. State, 643 So.2d 70 (Fla. 2d DCA 1994); State v. Hammonds, 557 So.2d 179 (Fla. 3d DCA 1990); Nease v. State, 484 So.2d 67 (Fla. 4th DCA 1986).” Phillips v. State, 707 So.2d 774, 775 (Fla. 2d DCA 1998). It is equally well settled that the consent can be withdrawn either verbally or nonverbally. See E.B., 866 So.2d at 203. It is not so well settled what type of nonverbal conduct revokes consent to search or who bears the burden of proof to establish that consent once given has been revoked.
The Fifth Circuit approaches consent searches with a rather useful analytical structure. See United States v. Freeman, 482 F.3d 829 (5th Cir.2007). In Freeman, the court divides this issue into four subis-sues: (1) Did the defendant consent? (2) Was the consent voluntary? (3) Was the search within the scope of the consent? and (4) Did the defendant have the authority to give the consent? Id. at 831-32. As to the latter of these two questions, the Fifth Circuit explains:
Unlike the first two issues, scope and authority are not determined based on a totality-of-the-circumstanees standard, but by a reasonable-officer standard. The burden of proof remains on the government.
482 F.3d at 832. The Fifth Circuit appears to treat withdrawal or revocation of *897 consent in this context as an issue for the State to address within subissue (3) and places the burden of persuasion on the State because the search is a warrantless search.
In a similar analysis, the Tenth Circuit in United States v. Patten, 183 F.3d 1190 (10th Cir.1999), explained:
In determining the scope of a defendant’s consent, we ask what a reasonable person would have understood by the exchange between the defendant and police officer. A defendant’s silence and acquiescence may support a finding of voluntary consent. Moreover, a defendant’s failure to object when the search exceeds what he later claims was a more limited consent, is an indication the search was within the scope of consent.
Id. at 1194 (internal quotation and citations omitted).
Thus, we conclude that if a defendant raises the issue of withdrawal of consent by nonverbal communication, the State must prove by a preponderance of the evidence that the defendant did not engage in the type of nonverbal communication that an objectively reasonable officer would interpret as a withdrawal of consent. In this case, Mr. Petion’s conduct can be fairly summarized as a passive failure to object. Reviewing this issue de novo and relying on the circuit court’s historical findings, we conclude that he did not revoke or withdraw his consent by any nonverbal communication after the deputies found the secret compartment.[3]
V. THE CIRCUIT COURT HAD NO AUTHORITY TO SUPPRESS THIS EVIDENCE BASED ON THE FAILURE TO RECORD MR. PETION’S GRANT OF PERMISSION TO SEARCH
Finally, to the extent that the circuit court based its ruling on the failure of the deputies to videorecord the roadside consent, neither the parties nor this court has found any statute or precedent that required the deputies to record the consent. It may be that a circuit court’s job in determining historical facts would be greatly facilitated by such recordings, and the case law has many examples of trial and appellate courts relying upon the content of such recordings to resolve suppression issues. Nevertheless, there is no law that we have found declaring that it is a violation of the Fourth Amendment to fail to record a roadside consent when such equipment is available at the stop. We decline to create that law today.
Accordingly, the order granting the motion to suppress is reversed, and the case is remanded for further proceedings consistent with this decision.
Reversed and remanded.
CASANUEVA, J„ and CANADY, CHARLES T., Associate Judge, Concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. It should be obvious that Mr. Petion’s cooperative attitude, the fact that he does not own the car, and that he was unfazed by the deputies’ search of the passenger compartment and the secret compartment will make it more difficult for the State to prove that he had actual or constructive possession of this cocaine. That issue, however, is not material to the question of whether the cocaine must be suppressed.

. Because we hold that Mr. Petion provided consent to search this car and that the scope of his consent included the secret compartment, we do not need to decide whether these deputies had established the level of probable cause that would have allowed them to continue the search even if Mr. Petion had withdrawn consent. See United States v. Jurado-Vallejo, 380 F.3d 1235 (10th Cir.2004) (remanding case for further determination of probable cause in factually similar case). The totality of these circumstances is at least quite suspicious. If Mr. Petion had withdrawn consent to search after the deputies had found the after-market compartment, it is likely that they could have continued to detain him by means of a Terry stop, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that he would not have been free simply to drive away.