# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 23, 2022

Lyle W. Cayce
Clerk

No. 21-10729

United States of America,

*Plaintiff—Appellee*,

*versus*

Paul Michael Malagerio,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:20-CR-154

Before Smith, Clement, and Haynes, *Circuit Judges*.
Jerry E. Smith, *Circuit Judge*:

Paul Malagerio was seized by federal agents under an administrative warrant. A search of his trailer revealed several firearms that Malagerio, an illegal alien, could not lawfully possess. He moved to suppress evidence of the weapons, maintaining that the arrest and search violated the Fourth Amendment.

The district court denied Malagerio's motion, and he appeals. Malagerio says that the agents exceeded the scope of their administrative warrant by arresting him not in a public place but in his doorway. We conclude that

No. 21-10729

the district court did not err in finding that Malagerio was not arrested in his home or its curtilage. As for the search of the trailer, the record confirms the district court's finding that Malagerio consented. Because there was no error in the denial of the motion to suppress, we affirm the conviction.

I.

Malagerio is a Canadian citizen. He last entered the United States in 2013 without a visa, meaning that he could not legally remain for more than six months. In 2020, the Department of Homeland Security received a tip that Malagerio was in the country illegally. After further investigation, the senior detention deportation officer in charge of the case found probable cause that Malagerio was present unlawfully and issued an administrative warrant for his arrest.

A team of at least six agents was dispatched to arrest Malagerio around 7:00 am. The agents were concerned that Malagerio, who works in the exotic animals industry, might have access to firearms or dangerous animals. Malagerio was living in a trailer park; the owner of the trailer park allowed the agents to enter the property to talk to Malagerio. One of the officers had his bodycam turned on at this point and for about three minutes thereafter, though there is no audio until about halfway through that period.

An agent, having already unholstered his gun, then knocked on Malagerio's door and told him to come out with his hands up. Malagerio responded that he would be out shortly and came to the door about sixty to ninety seconds later. In the meantime, the agent on point had knocked repeatedly and "ordered" Malagerio to come out. By the time Malagerio came to the door, most or all of the agents had trained their guns on him, including one shotgun.

The agents instructed Malagerio several times to keep his hands up and exit the trailer. Malagerio complied and was promptly handcuffed. The

2

video ends around that point.

According to the agents, Malagerio verbally consented to the search of his trailer. Malagerio also signed a written consent, though it is not clear when he did so. For his part, Malagerio remembers telling the agents they would need to get a search warrant. Either way, the search transpired, and the officers discovered three firearms.

As an illegal alien, Malagerio could not lawfully possess the firearms. The government therefore indicted him for violating 18 U.S.C. § 922(g)(5) and § 924(a)(2). Malagerio moved to suppress all the evidence resulting from the encounter. As relevant on appeal, Malagerio maintained that his arrest and the search of his trailer violated the Fourth Amendment.

The district court held a lengthy suppression hearing in which Malagerio and three officers gave their versions of the events. The district court denied Malagerio's motion and made oral and written factfindings.

After reviewing the testimony and video, the court deemed the officers credible and Malagerio not credible. It also determined that Malagerio had not been arrested in his home because knocking on his door and instructing him to exit did not constitute a seizure. Even if his Fourth Amendment rights were violated, the court reasoned that the good-faith exception would mean that exclusion of evidence was not necessary. In reaching those conclusions, the court relied on *Abel v. United States*, 362 U.S. 217 (1960), in which the Court had affirmed the admissibility of evidence gathered per a home arrest without a judicial warrant. The court also found that Malagerio gave effective consent to the search of his trailer.

Malagerio stood trial, maintaining that, while he had been present in the United States illegally and had possessed firearms, he had not *known* he was present illegally. That defense proved unavailing, and the jury found Malagerio guilty. On appeal, Malagerio challenges the denial of his motion

No. 21-10729

to suppress, but he does not otherwise object to his trial or sentence.

## II.

Malagerio's primary theory on appeal is that he was arrested unlawfully, meaning that any evidence gathered from the subsequent search must be suppressed. His position depends on several premises. To prevail, his arrest must have been illegal, that illegality must be of the type that triggers the exclusionary rule, and the arrest must have poisoned the search. Instead of working through each of those premises, we focus on the district court's factual findings, which are not clearly erroneous and, instead, are supported by the record. Specifically, the district court found that Malagerio was not arrested in his home or its curtilage, so there was no Fourth Amendment violation.

## A.

When considering the denial of a motion to suppress, this court reviews legal conclusions *de novo* and factual findings for clear error. *See, e.g.*, *United States v. Charles*, 469 F.3d 402, 405 (5th Cir. 2006). We view the evidence in the light most favorable to the prevailing party, here the government. *See United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005).

## B.

Malagerio was arrested under an administrative warrant based on the suspicion that he was unlawfully present in the United States. Administrative warrants do not comply with the requirements that the Fourth Amendment places on judicial warrants. *See, e.g.*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011). In the immigration context, administrative warrants can be issued without probable cause that a crime has been committed[1] and without the

---

[1] Unlike those who enter the United States illegally, aliens who overstay their visas

involvement of "a neutral and detached magistrate." *United States v. Lucas*, 499 F.3d 769, 777 (8th Cir. 2007) (en banc). To arrest someone without a judicial warrant and with no suspicion that a crime has been committed would ordinarily be unconstitutional. But deportation is not a criminal punishment. *Mahler v. Eby*, 264 U.S. 32, 39 (1924). Thus, "immigration officers may seize aliens based on an administrative warrant attesting to probable cause of removability." *City of El Cenizo v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018).

Malagerio waives any contrary position and maintains, instead, that, although the agents might have been legally entitled to arrest him in a public place, they were not permitted to seize him within his home. The district court found that Malagerio was not seized until after he had exited his home (the trailer) and that he was not located on any curtilage of that home.

Those findings are not clearly erroneous. It follows that we need not decide whether an administrative warrant may be used to arrest an alien in his home. We leave that important question for another day.

Malagerio says that he was "seized in [his] doorway." Oral Argument at 4:06–08. But "a person standing in the doorway of a house is 'in a "public" place,' and hence subject to arrest without a warrant permitting entry of the home." *Illinois v. McArthur*, 531 U.S. 326, 335 (2001) (quoting *United States v. Santana*, 427 U.S. 38, 42 (1976)). As for Malagerio's notion that he was arrested in the curtilage, the district court found to the contrary. Malagerio was spread on the hood of his truck that was parked in an open driveway between his trailer and a neighbor's. Such an open driveway is not curtilage, *see Evans v. Lindley*, No. 21-20118, 2021 WL 5751451, at *5 (5th Cir. Dec. 2, 2021) (per curiam) (unpublished), and at the very least, the district

---

commit only *civil* violations. *See* 8 U.S.C. § 1227(a)(1)(B). The agents who arrested Malagerio acknowledged that they could not have shown probable cause for a judicial warrant.

No. 21-10729

court's finding of no curtilage is protected as plausible in light of the record as a whole.[2]

## III.

Malagerio presents an alternative theory: Even if his arrest did not trigger the exclusionary rule, the warrantless search that turned up the guns would still be unconstitutional. The district court concluded that the search had been permissible because Malagerio consented to it.

Malagerio primarily contests whether his consent was voluntary. But he also advocates factual conclusions that, if correct, would mean he never gave effective consent. The district court considered and rejected his notion of effective consent. As for voluntariness, Malagerio never presented that contention in the district court. Malagerio thus faces daunting standards of review, and the evidence he points to is not close to sufficient. We reject his alternative theory.

## A.

The government maintains that review is for plain error, and we agree regarding the theory of voluntariness. Meanwhile, the theory that Malagerio never gave effective consent is reviewed for clear error.

In his motion to suppress, Malagerio objected that the agents "searched his home without a warrant or effective consent." Specifically, he alleged that "[a]t all relevant times, Malagerio refused consent and requested agents obtain a warrant." He maintained that position in his reply motion, stating that "he did not consent at the time of the search . . . and . . . he

---

[2] It is also possible to interpret the record such that Malagerio was seized before he got to his doorway. But the district court found that he was not seized inside his home, and we must view the record favorably to the government. *See Gibbs*, 421 F.3d at 357.

requested agents obtain a search warrant."

At no point did Malgerio articulate the theory that he now advances on appeal—that is, that he "was not in a position to give voluntary consent." The district court accordingly characterized his position as "not contest[ing] the voluntariness of his consent . . . ; instead, he alleges that the did not give consent in any way." Thus, Malagerio did not advance any theory on voluntariness that was "specific enough to bring the alleged error to the district court's attention." *United States v. Fuchs*, 467 F.3d 889, 900 (5th Cir. 2006).

Malagerio's approach is thus subject to plain error review. Reversal would be appropriate only if, as the initial requirements, there is error and that error "is clear or obvious." *United States v. Hickman*, 331 F.3d 439, 443 (5th Cir. 2003).

On the other hand, Malagerio did press his effective consent theory in the district court, meaning that he is spared from plain error review on that score. But whether a defendant gave effective consent is a question of fact. *See United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). Factual findings are reviewed for clear error, meaning that we may overturn them only if we are left with "a definite and firm conviction that a mistake has been made." *United States v. Griffin*, 324 F.3d 330, 365 (5th Cir. 2003). Findings regarding the credibility of competing witnesses are especially difficult to overturn. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

## B.

For consent to excuse a warrantless search, "the government must demonstrate that there was (1) effective consent, (2) given voluntarily, (3) by a party with actual or apparent authority." *Scroggins*, 599 F.3d at 440. Malagerio has never disputed that he had authority to consent to the search of his trailer, so only the first and second prongs are at issue.

No. 21-10729

The existence of effective consent, like its scope, is determined with reference to "objective reasonableness." *United States v. Stewart*, 93 F.3d 189, 192 (5th Cir. 1996). "Recitation of magic words is unnecessary; the key inquiry focuses on what the typical reasonable person would have understood by the exchange between the officer and the suspect." *Id.*; *see also Scroggins*, 599 F.3d at 442 (determining that implied consent was sufficient).

Three officers testified that Malagerio consented verbally, and he signed a consent form. In calls from jail, he also mentioned that he had been cooperative. That evidence indicates that Malagerio gave effective consent.

Malagerio counters that the officers' testimony was internally inconsistent. For instance, one agent remembers initially asking for consent "to enter his trailer to get his Canadian passport and his identification documents," while another says that the initial consent also covered the firearms. But those discrepancies are minor, and the district court, viewing the testimony as a whole, deemed the officers consistent and credible.

As for the written consent, Malagerio's objection is stronger— because he was in handcuffs, he could not have signed it before the search, and "an earlier illegal search" cannot be justified "based upon a later consent to an additional search." *United States v. Melendez-Gonzalez*, 727 F.2d 407, 414 (5th Cir. 1984). But the written consent is irrelevant if, as the officers testified and as Malagerio implied in his jail calls, he consented verbally before the search. We thus reject Malagerio's theory that he did not effectively consent to the search.

> Turning to voluntariness, we apply a six-factor test:
>
> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's be-

8

lief that no incriminating evidence will be found. All six factors
are relevant, but no single one is dispositive or controlling.

*United States v. Freeman*, 482 F.3d 829, 832 (5th Cir. 2007) (quotation omitted).

Malagerio's custodial status was not voluntary, but most or all of the remaining factors tilt in favor of the search's being voluntary. The officers described Malagerio as "very cooperative," and "cordial." Malagerio described his own demeanor similarly. That testimony suggests he was not coerced. There is no indication that he is uneducated or unintelligent. And he claims that he feared no discovery of incriminating evidence because "[i]t's just guns in Texas."

It is less clear whether Malagerio knew he had the right to refuse. He says that he knew he had that right and exercised it, but the district court deemed him incredible. Even assuming Malagerio did not understand his right to refuse consent, that still leaves four factors in favor of voluntariness. We perceive no error in the denial of the motion to suppress on this ground, much less the kind of obvious error that would be necessary to prevail on plain error review.

Malagerio has not made the requisite showing that his consent to the search was either ineffective or involuntary. His challenge to the lawfulness of the search thus fails. Having rejected the challenges to the arrest and the search, we AFFIRM the conviction.