# United States Court of Appeals for the Fifth Circuit

---

No. 23-50110

---

United States Court of Appeals
Fifth Circuit

**FILED**

June 4, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

MICHAEL ORVILLE ANDERSON, II,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:21-CR-2-1

---

Before SMITH, ELROD, and GRAVES, *Circuit Judges*.

PER CURIAM:[*]

A police officer in Killeen, Texas, stopped Michael Orville Anderson II for driving with a defective headlight. Anderson moved to suppress evidence of a firearm obtained during the traffic stop, arguing that the arresting officer lacked reasonable suspicion to stop him because video evidence from the encounter shows that both of his headlights functioned properly. Because

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

the video evidence does not unambiguously controvert the officer's testimony from the hearing that Anderson's light was out, we AFFIRM.

In November 2020, Officer Reynaldo Contreras pulled over Anderson because his "left front headlight [was] out," a violation of Section 547.302(c) of the Texas Transportation Code. During his discussion with Officer Contreras, Anderson admitted that he was a felon and possessed a firearm. Anderson was later charged with violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He moved to suppress evidence obtained from the stop because, in Anderson's view, Officer Contreras's video of the encounter demonstrates that his headlights functioned properly.

At the hearing, Officer Contreras testified that Anderson's truck had a non-functioning driver's side headlight. The magistrate judge found Officer Contreras credible and reviewed the video evidence. The magistrate judge recommended denying Anderson's motion, and the district court adopted the magistrate judge's recommendation. Anderson was later convicted. He appeals the denial of his motion to suppress and his conviction.

The Fourth Amendment generally requires officers to obtain a warrant before searching or seizing an individual. *Terry v. Ohio*, 392 U.S. 1, 20 (1968). However, police officers may briefly detain a person for investigative purposes if they can point to "specific and articulable facts" that give rise to the reasonable suspicion that the suspect has committed, is committing, or is about to commit a crime. *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014). For a traffic stop to be justified, an officer must have reasonable suspicion "before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). The government bears the burden of showing that reasonable suspicion existed justifying the seizure. *United States v. Martinez*, 486 F.3d 855, 859–60 (5th Cir. 2007).

No. 23-50110

Factual findings supporting the denial of a suppression motion are reviewed for clear error; conclusions of law are reviewed *de novo*. *United States v. Smith*, 952 F.3d 642, 646 (5th Cir. 2020). We review "in the light most favorable to the prevailing party, here the government." *United States v. Malagerio*, 49 F.4th 911, 915 (5th Cir. 2022). Moreover, our review is "particularly deferential where denial of the suppression motion is based on live oral testimony because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Lim*, 897 F.3d 673, 685 (5th Cir. 2018) (citation omitted). Where testimony conflicts with video evidence, our court must view the "facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). When video evidence is "ambiguous[,]" however, *Scott v. Harris* "has no application." *Aguirre v. City of San Antonio*, 995 F.3d 395, 410 (5th Cir. 2021).

Here, Officer Contreras stopped Anderson for violating Section 547.302(c) of the Texas Transportation Code, which requires that "[a]t least one lighted lamp shall be displayed on each side of the front of a motor vehicle." Specifically, Officer Contreras testified that Anderson's truck "did not have the headlights – the driver's side headlights." He later testified that the light emanating from the driver's side of Anderson's truck came from a "fog lamp." Because Officer Contreras recorded the traffic stop with dash, body, and rearview cameras, we must determine whether video evidence unambiguously contradicts Officer Contreras's testimony.

Officer Contreras's dash camera shows Anderson's truck, followed by another vehicle, driving towards Contreras. This video—the only video in the record of the truck's lights before the stop—at first appears to reveal that Anderson's two headlights functioned as required by Texas law:



However, as Anderson continues towards Officer Contreras, his driver's side headlight appears to flicker and dim:



While one could view this video evidence in its totality as supporting Anderson's contention that both of his headlights were lit, we cannot say that it unambiguously controverts Officer Contreras's testimony that the driver's-side headlight was out, and that only Anderson's fog lamp provided light. Under Texas law, a lit fog lamp, without a headlight, does not fulfill the requirements of Section 547.302(c) of the Texas Transportation Code. *Francis v. State*, 425 S.W.3d 554, 557 (Tex. App.—Fort Worth 2014, no pet.) ("When reviewed in its totality, chapter 547 of the transportation code makes clear that *headlights* are required at night and distinguishes between the roles of headlights and fog lights in vehicle lighting." (emphasis added) (footnotes and citations omitted)).

The magistrate judge relied on post-stop evidence like the body and rearview camera videos to determine whether Officer Contreras had reasonable suspicion. For example, he found that the "strongest evidence in support of the stop" was Anderson's discussion with Officer Contreras in which Anderson acknowledged that his truck "only has one [headlight]" when not on "high beams." The parties also cite post-stop evidence in support of their respective positions. However, only "the facts known to the officer at the time" of the stop are relevant to the reasonable-suspicion analysis. *United States v. Alvarez*, 40 F.4th 339, 345 (5th Cir. 2022) (citation omitted). In any event, none of this post-stop evidence unambiguously contradicts Officer Contreras's testimony.

"We will find clear error only if a review of the record results in a 'definite and firm conviction that a mistake has been committed.'" *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (quoting *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011)). Because of the ambiguous nature of the dash camera video evidence in this case, we cannot say that the district court clearly erred. Accordingly, we AFFIRM.

No. 23-50110

James E. Graves, *Circuit Judge*, dissenting:

A picture is worth a thousand words.[1] But I guess you ought not believe your lying eyes if a Killeen police officer contradicts what you see. The photographs from Officer Contreras' dash cam video clearly show that the headlights on Anderson's truck are on. The photographs below depict what Officer Contreras saw when he spotted Anderson's truck.



Dash Camera Video 5756 at :04 (screenshotted)



Dash Camera Video 5756 at :06 (screenshotted)

There's more. The photograph from the rearview camera confirms that both headlights were on as Officer Contreras drove away from Anderson's vehicle with Anderson in the backseat of the police car.

_____

[1] The old adage was coined by Henrik Ibsen, a Norwegian playwright who died in 1906. Henrick Ibsen, https://en.wikipedia.org/wiki/Henrik_Ibsen (last visited May 30, 2024). The modern use of the phrase first appeared in a *San Antonio Light* newspaper advertisement in 1918. *Pictorial Magazine of the War*, San Antonio Light, January 10, 1918, at 6.

No. 23-50110



Rearview Camera Video 6:26 (screenshotted) (emphasis added)

Moreover, Anderson's friend, William Mecum, testified that the headlights were on when he drove the truck home immediately after Anderson's arrest. Yet, the district court denied the motion to suppress.

The majority concluded that the video evidence did not unambiguously controvert Contreras's testimony that the headlight was out, but the "videotape tells quite a different story," *Scott v. Harris*, 550 U.S. 372, 379 (2007). In the first image, the left headlight is larger than the right. In the second image, the left headlight is smaller than the right. But in both photos, the headlights are functioning. The fact that the right headlight may seem smaller and the left headlight larger, or vice versa, is likely caused by differences in distance and/or glare on the windshield. "There are no allegations or indications that this videotape was doctored or altered in any way[.] The videotape quite clearly contradicts the version of the story" told by Contreras and adopted by the magistrate judge, the district court, and the majority. *Scott,* 550 U.S. at 378. Clearly, both headlights are functioning. Again, the images in the first two photos were captured as the vehicle was moving and then making a right turn.

The majority points to Anderson's response to Contreras about the functionality of his headlight as an admission. It is worth noting that

Contreras did not inform Anderson of the alleged traffic violation until after Anderson confessed that he was a felon in possession of a firearm. Contreras asked Anderson to lean against the front of the patrol car and stated, "The reason I pulled you over Mr. Anderson is because your left front headlight is out. Has it been like that for a while?" Anderson responded, "No, well I just realized it was I guess because it's running on high beams[.]"

The majority ignores that Contreras' question presupposed that the headlight was out: "Has [the headlight] been [out] for a while?" Presuming the truth of Contreras' statement, Anderson explains that he "guess[es] [it was out] because it's running on high beams." A guess is not an admission. Because the Government did not meet its burden of establishing that there was reasonable suspicion that Anderson's left headlight was not on, the motion to suppress should have been granted. Anderson's conviction should be vacated.

I respectfully dissent.